E-FILED
Tuesday, 26 March, 2013 04:08:01 PM
Clerk, U.S. District Court, ILCD

United States District Court

Central District of Illinois,Urbana

Norvell T. Moore,
Plaintiff
v.

U.S.Marshall Kim Widupp
Timothy F.Bukowski
Michael D Downey
Jermey Most
Matthew Meehan
John Jergens
Kyle Vance
Tyson Nolan
Leland Dyer
CO Miss Taylor
CO Vinkey
CO Herrington
CO Owens
CO Bartochie
CO Montalvo
CO Cruthers
CO Georgette
CO Offerman
CO Grant
CO Jackson
CO Alston
CO Jerriete
CO O'Connor
Jeffery Long M.D.
Tinki White P.A.

Case No 2:13-CV-02016-MPM-DGB

Jury Trial Requested

RECEIVED
MAR 22 2013
U.S. CLERK'S OFFICE
URBANA, IL

First Amended Complaint

Plaintiff Norvell T.Moore for his Complaint against Defendants alleges as follows:

Nature of The Case

1. This is a Civil Rights action for money damages and injunctive relief for Defendants lack of adequate Medical Care and Deliberate indifference that have deprived Mr.Moore of his legal rights and led to his hospitalization and Unnecessary and Unreasonable Pain and Suffering Defendants are directly and indirectly responsible for the medical mistakes that happen when Mr.Moore was given the wrong Medication, by allowing unlicensed Correctional Officers to hand out Medication. Defendant's Negligence violated Mr.Moore's rights under the Eighth Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment U.S. Const. VIII; U.S.C.A. Amends 8th and 14th.

## JurisDiction and Venue

2.Defendants have violated Mr.Moore's Civil Rights during Mr.Moore's incarceration at Jerome Comb's Detention Center. This Court has jurisdiction under 28 U.S.C.s 1331, 28 USC s 1343 (a)(3) and 42 U.S.C. s 1983. This Court has supplemental jurisdiction over the State Law claims under 28 U.S.C. s 1367 (a)

3.Injunctive relief and damages are authorized pursuant to 42 USC s 1983.

4.Incident that form the basis of this First Amended Complaint occured in Kankakee County, Illinois. Venue is therefore proper under 28 U.S.C. s 1391

## Parties

5.Plaintiff Norvell T.Moore, is a resident of Chicago, Illinois, and was an inmate in the Custody of the U.S.Marchalls at Jerome Combs Detention Center in KanKakee, Illinois from February 2011 through and including July, 2012

6.Defendants include Sheriff: Timothy F.Bokowski. Chief of Corrections: Michael D.Downey
Correctional Officers (Named All Officers on Front Page)

7.Defendant also include Jerome Combs, Medical Staff. Supervisor:Jeffery Long,M.D. ,Tiniki White,P.A.

8.Defendant also include U.S.Marshals Kim Widupp or Darryl McPherson, now in his place and stead.

9.At all times relevant to this First Amended Complaint, the Defendants were acting under The Color of Law.

## Factual Background

10.Mr.Moore was a Federal Detainee under the Custody of the United States Marshal. He was housed at the Jerome Combs Detention Center,from February 2011 through July 2012, pursuant to an agreement betweend the United States Marshals Service, the County of Kankakee and the Kankakee County Sheriffs Office.
He is currently housed at Metropolitan Correctional Center in Chicago,Illinois

11.The Act and Omissions that form the basis of First Amended Complaint,took place while Mr.Moore was in Custody at Jerome Combs and are alleged upon information and belief.

12.Timothy F.Bukowski,(Sheriff) and Michael D.Downey have adopted the practice of allowing the Correctional Officers at Jerome Combs Detention Center to pass out the medication at 8am, 12p.m. and 8p.m. Organized Medical Administrations, commonly known as Pill Lines.

13.On or about nov 23rd,2011 at 8 p.m, plaintiff was housed in cell H.4 when the correctional officer on duty came around to distribute the medication in which Mr.Moore was given the wrong medication by the officer.

14. On Nov 24,2011, on or about 8 p.m the officer distributing morning medication found Mr.Moore in cell H.4 Unconscious and Unresponsive. after after calling the nursing staff it was noted that Mr.Moore carotid pulse was lost and he actually had no"pulse" at all.

15.Mr.Moore was noted Inontinence of Urine, perrl, clear breath sonds; b/p 100/52 p 84 r12, at that point nurse ~~bems~~ Berns, heather called for Ambulance. and assisted administer bag valve mask ventilations until "plaintiff" was Transported to the Ambolance.

16. Mr.Moore went into cardiopulmanary arrest and based on information and belief Mr. Moore DIED TWO TIMES while on the way to the hospital, befor he was finally resucitated and admitted to the intensive care unit.

17.Mr.Moore stayed in a coma for the next four days and was non-responsive even to painful stimul:provided by the Hospital.

18. Based on information and belief as a result of allowing non-medical personnel to pass out medication, Mr.Moore suffered from hypothermia, acute respiratory failure; pneumonia; High blood pressure; and dissociative amnesia.

19. Mr.Moore woke up four days later and was told that he was lucky to be alive and that the medical staf was waiting for him to pass away.

20. Mr.Moore was discharge from st mary Hospital on November 29,2011, and sent back to jerome combs detention center.

21. Mr.Moore was placed on "SUICIDE" watch he was placed in a cold cell with nothing but a gown; no sheets or blankets and at that time Mr.Moore was still suffering from pneumonia and was forced to freez in this cell for 2 and a half weeks.

22. After Mr.Mooer was taken off "SUICIDE"watch he was forced to stay in solitary confinement until two months without any disciplinary report.

23. the jail officails and medical staff then attemped to cover up their negligence and blamed the events on Mr. Moore saying he attemped suicide by taking all of one medications? but not the others that were in his position.

24.Mr.Moore was then subjected to several psychological evaluations. plantiff was defendants by reporting knowlingly false and private information on plaintiff the slundering of Mr.Moore name by pedaling false information.

25. Based on information and belief allowing officers to hand out medication is a common procedure that is used in prison medical protocols of the Illinios Dept of Corrections which governs the KanKakee County jail,as delegated under Illinois law.

26.Mr.Moore file grivances on this issues as instructed in the inmate hand book and my grievance was not answerd.

27.Mr.Moore then wrote a letter to the Illinois Department of corrections thus exhawsting his grievance procedures.

28.Mr.Moore had caught this mistake on two diffrent Occations were officer pour anther person medication in his hand. office vinkie had poured anther inmates medication in Mr.Moore hand and Mr.Moore notice and told her that the medication wasnt his and C.O vinkie look at the envolope and noticed it indeed was anther inmates at which time she took back the wrong medication and gave Mr.Moore his medication this all so happened with C.O harcar

## CLAIMS

Section 1983 claim for inadequate access to medical care against all defendants

29.Mr.Moore realleges and incorporates by reference Herein paragrahs 1 through 26 above.

30.Pursuant to 42 U.S.C.§ based on eight amendment,Mr.Moore Has a right to adequate access to medical care.

31.Defendants have deprived Mr.Moore of adequate medical care in violation of his eight Amendment right.

32.For nearly (18)months defendants allowed non-medical personell to administer medication to Mr.Moore.

33.Defendants knew or should have known the dangers behind letting officers Administer medication and that these conditions presented a substantial risk of serious harm to his health and the other inmates that take medication.

34.By repeatedly allowing the officer named in this complaint to administer medication, Defendants acted with deliberate and reckless indifference, causing Mr. Moor's rights under the Eighth Amendment.

35.Defendant's conduct was willful, wanton, malicious and in reckless disregard for Mr.Moor's rights under the Eighth Amendment.

36.Mr. Moore has suffered death before being revived. He has been harmed, irreparably, as a result of Defendant's Conduct and Omissions.

37.At all times relevant to this first Amended Complaint, Defendant's acted under the Color of Law.

count II

Infliction of emotional Distress

38.Defendants continued to deny and did deny Mr.Moore adequate medical care for a period of (18) months

39.Defendants deliberately caused Mr.Moore to fear for his health, well-being and life and caused plaintiff emotional harm.

40. Defendants intended to inflict emotional distress on Mr.Moore when engaging in this conduct had a high probability emotional distress on Mr.Moore

41.Defendants conduct was willful, wanton,malicious and in reckless disregard of Mr.Moore's rights.

42.Mr.Moore has been harmed as a result of defendants conduct.

44.At all times relevant to this first Amended complaint, Dedendant acted under the color of law.

JURYDEMAND

WHEREFORE, Mr.Moore request that this court;
A. Order defendants to provide Mr.Moore with access to adequate medical care including but not limited to.

45.1)Sufficient and timely medical treatment, including employing nurses and medtecks to pass out medication

2.Employing medical staff for week ends

3.Employing medical staff for 3 to 11 shift

B.Award Mr.Moore judgment against each of the individual correctional defendants jointly and severally, for actual compensatory damages in an amount to be determined at trial but in an amount no less than $100,000,00,

C.Award punitive damages, in an amount to be determined at tial, jointly and sevarally against defendants.

D. Award cost, expenses, and reasonable attorney

E. Should any of the individual defendants be found liable on one or more of the claims set forth above, Mr.Moore demands that, pusuant to( ) 10/9-102, the defendants city of KanKaKee, be found liable for any judgment Mr.Moore obtain thereon against said defendants as well as for all attorney fee's and costs awarded;and

F.Grant such other and further relief as this court deems equitable just and appropriate under the circumstances

Respectfully Submitted

Rowell T. Moore 42749 424

Metropolitan Correctional Center
71 West Van Buren St.
Chicago IL 60605-1004

363643

PROVENA ST. MARY'S HOSPITAL
500 W. Court Street
Kankakee, IL 60901

## HEALTH INFORMATION MANAGEMENT

**NAME:** MOORE,NORVELL
**ATTENDING PHYSICIAN:** Al-Massalkhi,Mohamad I M.D.
**CONSULTING PHYSICIAN:** Michael J Sergeant M.D.
**UNIT #:** DJ00515760
**ACCT #:** DJ0011551198

**DOB/AGE/SEX:** 06/09/1982 - 29 - M

**ADMIT DATE:** 11/24/11
**DIS DATE:** 11/29/11
**LOC/RM/BED:** H013W2 - H01W0317-1

### CONSULTATION

DATE OF CONSULTATION:
11/24/2011

REFERRING PHYSICIAN:
Mohamad Al-Massalkhi, M.D.

HISTORY OF PRESENT ILLNESS:
Mr. Moore is a 29-year-old African American male who was apparently a Federal prisoner at the Combs Detention Center where he was apparently allowed to take his own medication and he took apparently an excessive amount of this medication some time this morning and was then found unresponsive. There is some confusion in the chart but apparently the patient actually did have an arrest while being transported to the emergency room. The patient was then resuscitated and was admitted to the intensive care unit where he has been intubated. He is not being sedated and has not assisted the ventilator. He is at the present time completely obtunded I. see no response to any kind of deep painful stimuli. The pupils appear to be very minimally reactive, somewhat more on the left than the right. The patient is undergoing hypothermia at the present time. Doll's eyes are absent. The face is symmetrical. There seems to be no asymmetry to the face. Tone in general is completely flaccid. I see no deep tendon reflexes and no toe sign.

IMPRESSION:
Appears to be profoundly neurologically depressed. The absence of doll's eyes is a poor prognostic sign. The presence of hypothermia at the present time, however, we cannot really make any judgments about brain function while hypothermia still going on. We will have to assess the patient after the hypothermia is over. We will obtain an EEG as a baseline tomorrow and follow-up EEGs may be necessary. It would appear that the main mechanism of action and the reason for his coma is anoxia since from the information I received, the gabapentin, Remeron, and Lyrica, other than respiratory depression, do not appear to have long-lasting central nervous system effects. Of course, anoxia can have profound central nervous system effects over the long term. We will obtain an EEG as a baseline tomorrow even though hypothermia will not be completely over at that point, but then we can use that as a baseline.